Filed 5/8/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re E.W. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>D.W. et al.,<br><br>     Defendants and Appellants;<br><br>A.W., a Minor, etc.,<br><br>     Appellant. | A165789<br><br>(San Francisco County Super. Ct. No. JD22-3070A–H) |
| In re J.W. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>D.W. et al.,<br><br>     Defendants and Appellants. | A165933<br><br>(San Francisco County Super. Ct. No. JD22-3147) |

In this consolidated appeal, appellants D.W. (Mother) and J.W. (Father) ask us to review the jurisdictional findings and disposition orders in the dependency proceedings regarding their nine children. One of the children, A.W. (Minor), also appeals. None of these appellants claim any

1

error requiring reversal of the findings or orders. Instead, they ask us to conditionally affirm and remand the case for the San Francisco Human Services Agency (Agency) to comply with its obligations under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and related California law (Welf. & Inst. Code, § 224 et seq.).[1]

Specifically, appellants argue that the Agency failed its duty of initial inquiry into the children's possible Native American heritage. Mother first indicated that the maternal grandmother had some Native American ancestry, but then Mother reported she herself was not indigenous and had completed genetic testing confirming she had no Native American ancestry. Father reported he had no Native American ancestry, which he confirmed on his ICWA-020 form, Parental Notification of Indian Status and in representations to the juvenile court. The Agency subsequently interviewed the maternal aunt (as the maternal grandmother is deceased) and the paternal grandmother, who both denied any Native American ancestry. On these facts, we reject appellants' contention that the Agency was required to interview five additional extended family members, and we affirm the orders in their entirety.

## BACKGROUND[2]

In March 2022, the Agency filed a petition on behalf of Mother and Father's eight children[3] pursuant to section 300, subdivisions (b) (failure to

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] The following brief background summary is intended to provide context to the ICWA issue raised on appeal.

[3] The petition also included an older child who is not a party to this appeal because she turned 18 years old shortly after the petition was filed; her case was dismissed in December 2022.

2

protect), (c) (serious emotional damage), and (d) (sexual abuse). The Agency subsequently amended the petition to include allegations under section 300, subdivision (j) (abuse of sibling). The Agency alleged, among other things, that the children were at risk of sexual abuse because Father had sexually molested three of Minor's siblings and Mother was aware of the sexual abuse but did not take steps to keep her children safe.

The Agency's detention report noted that on March 4, Mother indicated that the maternal grandmother "had some Native ancestry, Blackfoot Indian and Cherokee," but Mother did not have additional details. Father reported he had "no Native American ancestry." On March 8, Mother reported that "she is not Native American and she paid for genetic testing through ancestry.com, and the results did not have any Native American ancestry, nor do they belong to a tribe." The report stated, however, that further inquiry was necessary because there was reason to believe the children may be Native American children. The report identified the paternal grandfather and paternal aunt to be assessed for resource family approval.

At the March 9th detention hearing, Mother's counsel represented that "some of the basic information the court may want to know now is that the mom has no Indian—no Indian ancestry as far as she knows." The juvenile court responded: "The detention report seemed to indicate she may have Blackfoot and Cherokee ancestry. But based on your conversation today, I'll make a finding that since she is saying—maybe there was a misunderstanding. I'll make a finding that the Indian Child Welfare Act does not apply, that there's no reason to believe or know that these children are Indian children." The court ordered the children detained. The written detention order, however, did not include the court's oral ICWA finding.

Mother filed an ICWA-020 form, Parental Notification of Indian Status on March 9, indicating "no Indian ancestry as far as I know." Father filed his form on March 14, checking the box "None of the above apply."

The Agency's jurisdictional and disposition report noted that on March 17, both parents again denied any Native American ancestry. The maternal grandmother is deceased; the maternal aunt and uncle reside out of state. On March 18, the social worker spoke with the maternal aunt, who reported, "there was no documented information about the family having any Native American ancestry." On March 31, the social worker spoke with the paternal grandmother, who also reported that there was no Native American ancestry. The report concluded there was no reason to believe or know that the children may be Native American.

After the contested jurisdiction and disposition hearing in June 2022, the juvenile court found true allegations under section 300, subdivisions (b), (c), (d), and (j), declared dependency, and ordered reunification services for the parents as outlined in the Agency's case plan. The maternal cousin had attended the hearing remotely as a support person for Mother. The paternal grandfather also attended. The maternal aunt testified at the hearing; among other things, she explained that the maternal uncle is "mentally disabled" and is in her care. Mother, Father, and Minor filed notices of appeal from these jurisdictional findings and disposition orders.

Mother gave birth to another child on May 22, 2022. The Agency filed a petition that was subsequently amended to include only section 300, subdivision (j). The detention report noted that on June 2, Mother stated that neither she nor Father had any Native American ancestry and there was no reason to believe or know that the newborn may be a Native American child. At the June 7 detention hearing, Mother's counsel stated, "I think the

court's already gone over her ICWA status, which is no [N]ative American heritage." The juvenile court asked both parents if they had any Native American ancestry on their sides of the family. They responded no. The court then found ICWA did not apply, and included this finding in the written detention order. The court ordered the newborn detained.

The court held the contested jurisdiction and disposition hearing in July 2022. The court found the section 300, subdivision (j) allegations true, declared dependency, and ordered reunification services for the parents as outlined in the Agency's case plan. Mother and Father filed notices of appeal from these jurisdictional findings and disposition orders.

## DISCUSSION

Appellants do not challenge the juvenile court's jurisdictional findings that the children are persons described by section 300, or its dispositional orders removing the children from the parents' custody. Instead, they seek "conditional affirmance and remand" because the Agency failed to satisfy its initial duty of inquiry into the children's possible Native American heritage and, accordingly, the juvenile court's findings regarding ICWA inapplicability are not supported by substantial evidence. We begin with the applicable legal framework.

## I. Legal Framework

"Congress enacted ICWA in 1978 to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement, usually in non-Indian homes."[4] (*In re D.S.* (2020)

---

[4] Since "ICWA uses the term 'Indian,' " much of the case law does so as well "for consistency, even though" the authors of those decisions "recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

5

46 Cal.App.5th 1041, 1048.) ICWA establishes "minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes." (*In re D.S.*, at p. 1048.) California has adopted "various procedural and substantive provisions" to supplement ICWA and, following the enactment of new federal regulations, "California made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements." (*In re D.S.*, at p. 1048.)

The juvenile court and the Agency have "an affirmative and continuing duty" to inquire whether a child for whom a section 300 petition has been filed "is or may be an Indian child." (§ 224.2, subd. (a).) When a child is placed into temporary custody, the Agency has a duty of initial inquiry that "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) The phrase "extended family members" is defined to include adults who are the child's "grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c) [adopting ICWA definition of "extended family member"].)

If the initial inquiry creates a "reason to believe" the child is a Native American child, but there is not sufficient information to determine that there is "reason to know that the child is an Indian child," the Agency must make "further inquiry . . . as soon as practicable." (§ 224.2, subd. (e).) Further inquiry includes, but is not limited to, interviewing the parents,

6

Native American custodian, and extended family members. (*Id.*, subd. (e)(2)(A).) If this further inquiry establishes a "reason to know" the child is a Native American child, notice must be provided to the pertinent tribes. (§ 224.3.) With this framework in mind, we turn to appellants' arguments in this consolidated appeal.

## II. Analysis

Appellants raise a narrow question regarding the Agency's duty of initial inquiry under section 224.2, subdivision (b). They claim that ICWA required the Agency to include five additional extended family members in its initial inquiry: the maternal grandfather, the maternal uncle, the maternal cousin, the paternal grandfather, and the paternal aunt.[5]

On its face, section 224.2, subdivision (b) requires that an initial inquiry "be made of *at least* all of the following: (1) the child, (2) the parents, (3) the legal guardian (presuming there is one, although the statute doesn't say that explicitly), (4) the Indian custodian (again presuming there is one, although again the statute doesn't say that), (5) all grandparents, (6) all aunts and uncles, (7) all adult siblings, (8) all siblings-in-law, (9) all nieces and nephews, (10) all first cousins, (11) all second cousins, (12) the reporting party, and (13) all others who have an interest in the child." (*In Ezequiel G.* (2022) 81 Cal.App.5th 984, 1006 (*Ezequiel*).) But, "complying with the literal language of the statute—that is, making an *initial* and *further* ICWA inquiry of every member of a child's extended family, including first and second cousins, plus every other person who has an interest in the child—is absurd at best and impossible at worst." (*Ibid.*) The decision in *Ezequiel* explained

---

[5] Mother originally listed the maternal grandmother in her opening brief, but made no mention of her in the reply brief after the Agency noted that the maternal grandmother is deceased.

that family complexities counsel against mechanical application of the statute, and that "determining compliance with ICWA requires a significant exercise of discretion." (*Id.* at pp. 1006–1007.) The *Ezequiel* decision concluded, "the key" question on appeal "should be whether the ICWA inquiry conducted has reliably answered the question at the heart of the ICWA inquiry: Whether a child involved in a proceeding 'is or may be an Indian child.'" (*Id.* at p. 1009.)

Here, Mother initially indicated that the maternal grandmother had some Native American ancestry and represented to the juvenile court at the March detention hearing that she did not know of any Native American ancestry. Father, on the other hand, was consistent from the outset that he was not Native American. Father reported to the social worker that he had "no Native American ancestry," and confirmed this in his ICWA-020 form.

If the Agency had stopped its inquiry after Mother's initial representations, it would not have fulfilled its duty. The duty of inquiry "is premised on the commonsense understanding that, over time, Indian families, particularly those living in major urban centers . . . may well have lost the ability to convey accurate information regarding their tribal status." (*In re T.G.* (2020) 58 Cal.App.5th 275, 295.) The Agency is not relieved of its duty of inquiry when parents report that they do not know of any Native American ancestry. (*In re Y.W.* (2021) 70 Cal.App.5th 542, 554 (*Y.W.*).) Such a rule "ignores the reality that parents may not know their possible relationship with or connection to an Indian tribe." (*Ibid.*)

In this case, however, Mother made repeated subsequent representations that she lacked any Native American ancestry. Mother declared this in her ICWA-020 form, and again denied any Native American ancestry to the social worker on March 17. On June 2, Mother stated that

8

neither she nor Father had any Native American ancestry.  At the June detention hearing for her newborn child, Mother again confirmed that she had no Native American heritage and no indigenous ancestry on her side of the family.  Mother also reported that she completed genetic testing on ancestry.com, which revealed she had no Native American ancestry.  Mother's reporting concerning testing is consistent with her subsequent representations that she lacked any Native American ancestry.[6]

More importantly, after the Agency reported in its March detention report that further inquiry was necessary because there was reason to believe the children "may" be Native American children, it conducted a further inquiry of extended family members on both sides of the family.  The social worker inquired about Native American ancestry with the maternal aunt and the paternal grandmother.  The maternal aunt stated there was no documented information about the family having any Native American ancestry.  The paternal grandmother stated that there was no Native American ancestry.  Accordingly, in its May jurisdictional and disposition report, the Agency concluded there was no reason to believe or know that the children may be Native American children.

---

[6] California courts have proceeded with caution in weighing the significance, if any, of genetic analysis from Web sites like ancestry.com in the ICWA context.  (See *In re J.S.* (2021) 62 Cal.App.5th 678, 689.)  In *In re J.S.*, for example, explicitly did not decide whether ancestry.com is even a reliable source of Native American ancestry, and observed that results that indicate a parent *does* have some generalized Native American ancestry but do not identify a possible tribe or any specific geographic region are not particularly helpful, given that ancestry.com purportedly defines the " 'Native American Ethnicity' group" to include both North and South America.  (*In re J.S.*, at p. 689.)  The court concluded that such information has "little usefulness" in determining whether ICWA applies.

We are not persuaded that the Agency failed to satisfy its initial duty of inquiry in reaching its conclusion. Mother's repeated representations and ICWA-020 declarations by both parents, and the interviews of extended family members on both sides of the family, "reliably answered" the question of whether the children were Native American children. (*Ezequiel*, *supra*, 81 Cal.App.5th at p. 1009.) The Agency could not interview the maternal grandmother because she is deceased. The maternal cousin and paternal grandfather attended the June 2022 hearing, and the paternal aunt was referenced in the earlier detention report. But appellants do not explain how not interviewing additional relatives (as well as the maternal grandfather and the maternal uncle, whose sister testified has a mental disability that requires her care) casts any doubt on the reliability of the answers already obtained from the parents and relatives.

None of the cases discussed by appellants compel a contrary conclusion. The *Y.W.* decision determined that the children and family services department failed to conduct an adequate inquiry into the mother's Native American ancestry because the mother reported she did not know of any such ancestry but had been adopted, and the department did not make meaningful efforts to locate and interview her biological parents even after learning of a potentially viable lead to locate them. (*Y.W.*, *supra*, 70 Cal.App.5th at pp. 553–555.) In the *Benjamin M.* case, the social services agency *conceded* that it had failed its duty of initial inquiry because, while the mother denied Native American ancestry, the agency was unable to locate or contact the father and failed to ask his known relatives about any Native American ancestry. (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 740.) *In re A.C.* (2022) 75 Cal.App.5th 1009 involved a similar concession by the children and family services department because the mother reported she did not know of any

10

Native American ancestry, but the department did not ask the father and did not interview *any* extended relatives of either parent. (*Id.* at pp. 1011, 1013.) Unlike these cases, the parents here not only reported and declared that they had no indigenous ancestry, but this was confirmed by the interviews from relatives on both sides of the family.

In sum, we conclude that the Agency satisfied its duty of initial inquiry under section 224.2, subdivision (b). The juvenile court's findings regarding ICWA inapplicability were supported by substantial evidence.[7]

We reiterate, however, that the Agency and the juvenile court have an "affirmative and continuing" duty of inquiry. (§ 224.2, subd. (a).) The Agency "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes." (Cal. Rules of Court, rule 5.481(a)(5).) Even after its finding of ICWA inapplicability, the juvenile court is required "to reverse its determination if it subsequently receives information providing reason to believe that the child is an Indian child and order the social worker or probation officer to conduct further inquiry pursuant to Section 224.3." (§ 224.2, subd. (i)(2); see also Cal. Rules of Court, rule 5.482(c)(2).)

### DISPOSITION

The July 14, 2022 and August 4, 2022 orders are affirmed.

---

[7] Given this conclusion, we need not address the parties' arguments regarding whether appellants must demonstrate prejudice from a failure to satisfy the duty of initial inquiry.

11

_____
                              Markman, J.*


We concur:


_____
Richman, Acting P. J.


_____
Miller, J.


*In re E.W. et al.* (A165789, A165933)


      * Judge of the Alameda Superior Court, assigned by the Chief Justice
pursuant to article VI, section 6 of the California Constitution.

12

| | |
|---|---|
| Trial Court: | San Francisco County Superior Court |
| Trial Judges: | Hon. Monica Wiley<br>Hon. Braden C. Woods |
| Attorneys for Appellants: | By Appointment of the Court of Appeal<br>under the First District Appellate Project<br>Joseph T. Tavano<br>Jamie A. Moran |
| Attorney for Minor: | Carol Ann Koenig |
| Attorneys for Respondent: | Office of the City Attorney<br>David Chiu<br>Kimiko Burton<br>Elizabeth McDonald Muniz |